---

## In re RIFF.

(District Court, E. D. Arkansas, W. D.   May 19, 1913.)

1. PARENT AND CHILD (§ 16*)—EMANCIPATION OF CHILD.

Emancipation of an infant is express if with the consent of the parent the infant's disabilities are removed by the judgment of a court of competent jurisdiction, as authorized by Kirby's Dig. Ark. § 1309, or if made by a contract for a valuable consideration, and is implied if the parent has discharged himself of his obligation to support the infant by denying him a home and forcing him to labor abroad for his living, or gives or sells him his time. It may also be implied when the parent allows the child to make his own contracts and collect and obtain his wages.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 165–175; Dec. Dig. § 16.*]

2. PARENT AND CHILD (§ 16*)—IMPLIED EMANCIPATION—REVOCATION.

An implied emancipation, as between parent and child, is executory and revocable.

[Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 165–175; Dec. Dig. § 16.*]

3. CONTRACTS (§ 75*)—CONSIDERATION.

Where a party merely does that which in law he is bound to do, he cannot demand any additional consideration therefor; and if he obtains an additional promise from the other party it is nudum pactum and unenforceable.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 273–285; Dec. Dig. § 75.*]

4. BANKRUPTCY (§ 314*)—CLAIMS—WAGES OF CHILD—"EMANCIPATION."

Where a father, engaged in business, employed his minor son as chief clerk at a salary of $100 a month, and the son paid his mother for board and lodging $6 a week, but lived with the father as a member of his family, there was no such "emancipation" as would entitle the son to enforce a claim for wages unpaid against the father's estate in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 469–473, 478, 483–487, 489, 490; Dec. Dig. § 314.*

For other definitions, see Words and Phrases, vol. 3, pp. 2348, 2349.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Bankruptcy. In the matter of bankruptcy proceedings of H. D. Riff. On claim of Sol Riff for wages. The referee disallowed the claim, and claimant applies for review. Approved.

The claimant, Sol Riff, presented a claim against the estate of the bankrupt for the sum of $257, balance alleged to be due him for services as clerk of the bankrupt for three months next preceding the adjudication in bankruptcy. The only testimony offered was that of the claimant and the bankrupt, his father. The facts as established by the evidence are that the claimant is a minor, 20 years of age, and that the bankrupt is his father; that for the last several years he was employed as a clerk by his father, who was engaged in the mercantile business in Argenta, Ark., with the exception of about six months, during which time he was employed as a traveling salesman by another firm; that during all the time he was in the employ of his father he lived with his parents; that when he was first employed he received $15 a week for his services, but the last few months, the head clerk of his father having left, he was advanced to that position at a salary of $100 per month, the same salary which was paid to the former clerk; that during the time his wages were $15 a week he paid $5 a week to his mother for his board and lodging, and when his wages were raised to $100 per month he paid her $6 a week therefor; that about three years ago he subscribed for some stock in a building and loan association, paying $10 a month on the same out of his wages, the stock being taken in the name of his father "as trustee," but without designating the claimant as the cestui que trust. The claimant also testified that he kept a deposit account in one of the banks of Argenta; that until the last three months prior to the bankruptcy proceedings he was paid his wages regularly, but the last three months, owing to dull business, his father was unable to pay him his wages when due, and he only drew during that time the sum of $43, leaving a balance of $257 due him. The books were kept by the claimant, but they fail to show any account of his. This he explains by stating that while he was working for weekly wages he was paid every Saturday night, as were the other clerks, and that when he commenced working for $100 per month he would draw money as he needed it to pay his board and other expenses, including the building and loan assessments, and put a cash ticket in the drawer, and at the end of the month he would be paid his salary, less the amounts drawn by him during the month as shown by these cash tickets.

There was no evidence to show that his disabilities as a minor had ever been removed in conformity with the laws of the state of Arkansas, nor that he was emancipated by any agreement or contract in writing; but he relies on the oral agreement he made with his father that he was to be paid wages for his services as before stated. The referee disallowed the claim, upon the ground that the agreement with his father was nudum pactum, and the claimant now asks for a review of the order made by the referee.

J. A. Comer, of Little Rock, Ark., for claimant.
J. A. Tellier, of Little Rock, Ark., for trustee.

TRIEBER, District Judge (after stating the facts as above). As this is a claim against the bankrupt's estate, it must be one which could be recovered in an action against the father, if bankruptcy had not intervened, and it must not be fraudulent against his father's creditors; the trustee representing the interests of both the bankrupt and the creditors.

The law is well settled that it is the duty of the parents to provide for the maintenance of their children while under age, and, as a reciprocal duty, the services of the child, during his minority, belong

to the parents, including the earnings of the child. It is equally well settled that a parent may emancipate his infant children, and they are then authorized to collect for their services rendered to strangers. That the emancipation may be either express or implied is conceded by counsel for the trustee, leaving the only question involved whether, upon the facts as hereinbefore stated, an infant can recover, under an oral agreement, for services rendered his parent while living under his roof, although paying for his board and lodging out of wages paid him by his father.

[1] The emancipation is express if, with the consent of the parent, the disabilities of the infant are removed by the judgment of a court of competent jurisdiction, as provided by the statutes of Arkansas (section 1309, Kirby's Digest of the Statutes of Arkansas), or if made by contract for a valuable consideration, and, if the latter, is as irrevocable as any other contract. Abbott v. Converse, 4 Allen (Mass.) 530. It is implied if the parent has discharged himself of his obligation to support the child by denying him a home and forcing him to labor abroad for his living, or gives or sells him his time. Nightingale v. Withington, 15 Mass. 272, 8 Am. Dec. 101; Whiting v. Earle, 3 Pick. (Mass.) 201, 15 Am. Dec. 207; Morse v. Welton, 6 Conn. 547, 16 Am. Dec. 73; Beaver v. Bare, 104 Pa. 58, 49 Am. Rep. 567; Watson v. Murray, 54 Ark. 499, 505, 16 S. W. 293. It may also be implied when the parent allows the child to make his own contracts and collect and retain his wages. Fairhurst v. Lewis, 23 Ark. 435; Vance v. Calhoun, 77 Ark. 35, 90 S. W. 619, 113 Am. St. Rep. 111; Biggs v. St. L., I. M. & S. Ry. Co., 91 Ark. 122, 120 S. W. 970; Robinson v. Hathaway, 150 Ind. 679, 50 N. E. 883.

As there is no express emancipation in this case, but only an implied one, the question is whether that is sufficient to justify a recovery when the services were performed for the parent; the minor at the time living with his parents, but paying for his board out of the wages paid him by the parent. The authorities on this question are conflicting, but an examination of the reasoning upon which the conflicting decisions are based will aid in reaching a correct conclusion. As there is no question of rights of third parties, dependent upon the contract of the minor, involved in this case, it is unnecessary to consider the effect of a revocation of an implied emancipation in a case of that nature.

[2] It is well settled that an implied emancipation, as between parent and child, is merely executory, and therefore is revocable. Clark v. Fitch, 2 Wend. (N. Y.) 459, 20 Am. Dec. 639; Stovall v. Johnson, 17 Ala. 14; Dowell v. Applegate (C. C.) 15 Fed. 419. In Stovall v. Johnson it appeared that the father permitted his minor son to cultivate certain land for his own benefit, and it was held that such a promise was revocable. The court held:

"It appears to me that if a father, without any consideration, or merely in consideration of natural love and affection, emancipates his son in this way, still retaining him in his house as one of his family, the emancipation is a nullity and may be revoked at pleasure. It would be hard upon the father if it were not so, since he is legally responsible for his support, and morally responsible for the parental control due to his son. The father's

promise to give the son his time, or his gift to his son of a portion of the time of his minority, is executory in its very nature until the time has fully elapsed, and in the meantime the father may revoke it at pleasure; certainly so, if the son remains in the father's family. * * * As the father may effectually deprive the son of the fruits of his labor, it would seem to follow that he may take them to himself under his general right to his son's services."

In Tuite v. Tuite, 72 N. J. Eq. 740, 66 Atl. 1090, the children claimed that they had been promised by their mother a partnership in the business, in consideration of their services, and it was held by Vice Chancellor Garrison that:

"If they worked for her [the mother] under her direction * * * they but did their duty to her, and there is therefore no possibility of importing any consideration into any such agreement as they allege was made."

In Dowell v. Applegate, supra (Sawyer, Circuit Judge; Deady, District Judge, concurring), the same question arose; creditors attacking the conveyance made to his children, who were minors, for services rendered to the parent, upon the ground that such conveyance was voluntary, and therefore void as against creditors. The court said:

"The only consideration was a promise of a father to his several children that if they would remain at home with him, and work on the farm until they should, respectively, become of age, or marry, he would do by them as he had done by the older brothers—convey to them a part of his lands, putting them all upon an equality, without agreeing to convey any specific tract. Their remaining with him was nothing more than they were bound to do under the law. They therefore neither gave nor promised any consideration."

In the note to that case by Professor Ewell a number of authorities are cited on the proposition that:

"Services rendered by minor children to parents do not constitute a valuable consideration for a conveyance by the parents to the children." 15 Fed. 427.

[3] It is also a well-recognized principle of law that when a party merely does that which by law he is obligated to do he cannot demand any additional consideration therefor, even if he obtained a promise, as the law will regard it as nudum pactum and will not lend its process to aid in the wrong. Lingenfelder v. Wainwright Brewing Co., 103 Mo. 578, 15 S. W. 844; Main Street Co. v. Los Angeles Co., 129 Cal. 301, 61 Pac. 937; Goldsborough v. Gable, 140 Ill. 269, 29 N. E. 722, 15 L. R. A. 294; Ayres v. Chicago, etc., Ry. Co., 52 Iowa, 478, 3 N. W. 522; Wescott v. Mitchell, 95 Me. 377, 50 Atl. 21; Railway Co. v. Grafton, 51 Ark. 504, 11 S. W. 702, 14 Am. St. Rep. 66; Vanderbilt v. Schreyer, 91 N. Y. 392; Carpenter v. Taylor, 164 N. Y. 171, 58 N. E. 53; Alaska Packing Ass'n v. Domenico, 117 Fed. 99, 54 C. C. A. 485.

[4] The only evidence introduced is that of the father and son, and from the nature of the case it is almost impossible for the trustee or the creditors to adduce evidence to the contrary. To permit a recovery in such a case would enable insolvent debtors to use their children as a cover to defraud their creditors. Whenever acts of parties are

of a nature that, if permitted, would open the doors to fraud, the law will treat them as frauds at law, regardless of the intention of the parties. Robinson v. Elliott, 22 Wall. 513, 525, 22 L. Ed. 758.

The authorities holding that such contracts are valid and enforceable have been carefully examined, and, although some of them are by courts of the highest standing, the grounds upon which they are based do not appeal to the court as sound or convincing.

The order of the referee disallowing the claim is approved.